Good morning. Good morning, Your Honors. May it please the Court, Jessica Ring Amundsen on behalf of Appellant National Air Cargo, Inc. I'll plan to reserve three minutes of my time for rebuttal. Keep an eye on it. We'll try to help. I will. Thank you, Your Honor. We're asking the Court to reverse the judgment below with respect to both liability and damages. And I'd like to begin this morning by talking about why the liability judgment cannot stand. Global never should have been allowed to present its breach of contract claim to the jury. Global's theory was that the letter of intent was an exclusive agreement that bound National to sell exclusively to Global eight airplanes. But, counsel, in this case, we're talking about New York law, right? That's correct, Your Honor. And under New York law, wasn't what was presented to the jury appropriate? I don't believe so, Your Honor. Why not? I believe that the Court should have determined at summary judgment that the letter of intent was unambiguously. I thought the essence of this letter was that it was ambiguous. I don't think so, Your Honor. I think it's quite clear from the letter of intent that it is not an exclusive agreement. There's no exclusivity clause. If the judge, who you know is a very, very experienced trial judge. Yes, Your Honor. No longer on the bench. Yes, Your Honor. But she had a lot of experience. She looked at it, concluded, you know, there's some ambiguity here. We've got to go to the jury. That's normally what we do with that sort of thing, isn't it? Well, Your Honor, we contend that the trial judge erred in finding it ambiguous because there was no exclusivity clause in the agreement. And there was no other textual indication on the face of the agreement that it was, in fact, an exclusive agreement. So the two things that Global cites that it says renders this agreement exclusive are the agreement's reference to eight specific airplanes and the agreement's language of lesser and lessee. But as to the reference to eight specific airplanes, that, of course, proves too much because every letter of intent would refer to the goods over which the parties are agreeing to negotiate. It doesn't automatically render the agreement an exclusive agreement to negotiate exclusively with one another. And as to the lesser lessee language, this agreement was not on its face lesser lessee agreement. I understand that, but I guess what I'm struggling with is the judge said to you, look, you can argue this to the jury all you want. Say why it's not exclusive. Say why, you know, all the things that you were talking about and all that you talked about in the brief is so, but this is ambiguous. One can construe it in a different way. You all made your argument. The jury didn't believe you. So what are we to do with that? So let's accept your premise, Your Honor, that in fact the agreement was ambiguous. The trial court further erred, and at this point we have a new trial judge, not Judge Morrow, but the trial court erred in then completely failing to instruct the jury about exclusivity, which was the entire issue. Did you tender an instruction on exclusivity? We did, Your Honor. We tendered an instruction that tracked exactly what Judge Morrow had said GLOBAL needed to prove at trial, which was, one, that GLOBAL communicated to National, excuse me, that National communicated to GLOBAL that it acceded to its demand for exclusivity, and, second, that National intended for the agreement to be exclusive. And I think that the whole concept of exclusivity, which was the entire basis for GLOBAL's theory of damages, was entirely absent from the jury instructions. The jury instead was simply given a generic breach of contract instruction, which said that they could find a breach if they found that National terminated the letter of intent without justification. Here's what I see on ER 714. The district judge said you can put forth what you think the ambiguous term is through evidence during your closing argument, and that can be presented to the jury in that way, so I think I'm just going to rule against an instruction of exclusivity. That's correct, Your Honor. That's correct, right? Yes. So under the circumstances, since the judge was not convinced that it was not exclusive, what else could the judge have done? You would want the jury to decide that. I assume if the judge wasn't going to agree with you, you at least want to have a shot at getting the jury to agree with you, right? Right, so we wanted the judge to actually instruct the jury on exclusivity in accordance with what Judge Morrow had said was GLOBAL's burden to prove at trial. Right, but apparently this judge concluded that there was enough ambiguity that you're going to let the parties just argue it out, make their pitch to the jury, and let the jury decide. Well, what this Court has said in the GLOBER v. BIC case and other cases are that when there is a concept that is fundamental to the defense's case and it's entirely absent from the jury instructions, that's prejudicial error to the defendant. Under New York law? I don't recall whether the GLOBER v. BIC case was under New York law, Your Honor. That's an important factor in this case, is it not? Well, Your Honor, I guess under New York law, what the Court gave was simply a generic breach of contract instruction versus the exclusivity that was the fundamental basis of GLOBAL's theory of liability. And it's the basis upon which GLOBAL was then allowed to ask the jury for $194 million of its lost profits damages. GLOBAL contended that this was an exclusive agreement that bound National to sell to GLOBAL eight airplanes. Right. And so based on that theory, it was permitted to go to the jury with a hugely inflated sum of $194 million after it had signed a letter of intent and spent four days making phone calls and sending emails in an attempt to find financing. And I get your – I sense the outrage when I read the brief. I almost burned my hand. I actually was in this iPad, but the iPad got hot, of course. But the reality is that, you know, it's really clear you feel like there's a great miscarriage of justice here. I get that. But I also see that the judge is saying, you know, under New York law, this is a much looser standard than what we have under California law. We've got to apply New York law here. We've got to let the jury decide that. You gave it your best shot. You made it seem like this is a one-person operation. It couldn't possibly have happened. This is not what the parties meant. They presented their perspective, and the jury largely bought what they said and awarded an amount substantially less than what they asked for. It's – you know, it's a typical jury kind of situation. So from my perspective, what I'm wrestling with is what's a – what is the reversible error here? I mean, I understand you're not happy with the result. I'm not saying – if I'd been on the jury, I'd have felt the same way the jury did, perhaps quite differently. But that's the role of the jury, is it not? Well, but, Your Honor, the reversible error here – and Your Honor said New York law is maybe not as clear on this. New York law is crystal clear on the fact that the breach of a preliminary agreement, an agreement that's just an agreement to negotiate, does not entitle a plaintiff to ask for lost profits damages. And Global Below, and continues here, tries to recharacterize its damages as benefit of the bargain versus lost profits damages. It doesn't really matter what label we put on these damages. They're expectancy damages. So you're more concerned about the measure of damages than the jury's ultimate conclusion that this was an exclusive contract. Is that your primary focus? Your Honor, we're concerned about both. But at this point, I would ask the court to focus on the damages where I believe that there was definitely an error of law in allowing Global to go to the jury to ask for lost profits damages or expectancy damages. And I would ask the court to look at the Fairbrook leasing case, which is an Eighth Circuit case applying New York law that's almost exactly on all fours with the case here. It's a case in which the parties signed a preliminary term sheet and agreed that they would then later negotiate the master lease for the lease of 20-plus airplanes. What case is that? It's Fairbrook leasing versus Misawa Airlines, Your Honor. And it's cited in our briefs, in both the opening brief and the reply brief. It goes through New York law on this issue and explains that New York law does not allow a party to recover expectancy damages for the breach of an agreement to negotiate because it's too remote and speculative. And in that case, there was a term sheet that actually laid out the rental prices, et cetera, for the aircraft over the length of time. And Fairbrook said, after Misawa breached the— after negotiations broke down before the final lease agreement was reached, and Fairbrook said we should be entitled to all of the profits that we would have made over the lifetime of leasing those airplanes. And the court said, no, you're not entitled to that. It's too remote and speculative. We don't know what the terms and conditions would have been in the ultimate lease agreement. And the same is true here. This letter of intent left multiple issues open to negotiation between the parties. But does—Counsel, forgive me. If I understand correctly, we're applying the uniform commercial code in this, right? Your Honor, yes. New York's universal? Yes. Yes, Your Honor. Okay. So under the circumstances, there's, of course, a lot of law about damages when you have commercial code issues concerning the sale and lease of goods. Right. Commercial goods. Is this a big question legally from your perspective? You're just saying the law is really clear and it's different than what the district judge applies? Is that what you're saying? Yes, Your Honor. We're saying that the law is clear that they should not have been allowed to ask the jury for expectancy damages. And the Goodstein case is the seminal New York case on this issue. It's discussed in the Fairbrook case, which I cited earlier. But the Goodstein case says you would be transforming an agreement to negotiate into the agreement itself. The only way that Global gets to ask the court for its expectancy damages or ask the jury for its expectancy damages is if it can show that this agreement is not an agreement to negotiate but is in and of itself has all the final terms and conditions. In your client's view, again, arguing, I know you believe that the whole thing should be thrown out, but if we focus on the damages for a moment, what is the range of damages that you think would have been appropriate in this case as opposed to what was actually awarded? Global would have been entitled to its out-of-pocket damages in this case, which consisted of out-of-pocket damages for four days of making phone calls and sending emails. But Global put on no evidence at all at trial of its out-of-pocket damages. And so we don't think it should get a second bite at the apple to go back and prove out-of-pocket damages. With respect, counsel, doesn't that defy common sense? Again, if you take as a given for purposes of our discussion that they had a contract, an exclusivity contract, and that there were millions of dollars involved, they talked about what they did. They talked about the Goldman Sachs issues and so on and what was involved and the kind of dollars that would be derived from that. If a contract is breached, you normally look to what would naturally flow from that, would you not? You do, Your Honor. But I think it's critical here to understand what kind of contract this is. I understand, but I'm just saying it is. This is a contract to negotiate toward the possible. That's your position. I understand that. But that's not what the jury found. So I'm saying for discussion purposes only, if the jury's verdict as to the nature of the contract is upheld, the level of damages is more appropriate in the range that the jury found. It's not just out-of-pocket damages. Well, Your Honor, on that point, we think that the jury had to necessarily speculate in order to reach this verdict because they were presented with such a broad range of scenarios, anywhere between one and eight airplanes being acquired under operating. They came back with an amount which was substantially less than what the plaintiffs had asked for, right? That's correct, Your Honor. Do you want to save any of your time? I do, Your Honor. I know we've gone on a little bit here. I do. Thank you, Your Honor. Let's hear from Global. May it please the Court, Katie O'Sullivan for Global BTG. In many ways, Your Honors, on appeal, this is an easy case. You have a signed contract. The jury deliberated for two days and concluded that National breached that contract, and the jury came up with a reasonable damages award. Does it matter that the jury had a problem? It doesn't matter that the jury had a problem. Let me answer that. The jury asked a question after deliberating for about one day, and they asked about speculation. How do we come to an award? And the judge gave them an instruction to which there was no objection from National, and then the jury considered and deliberated again for about another full day. And so there's a United States Supreme Court case on this, the Weeks case. The presumption is that the jury follows all instructions, and the presumption is also that the jury follows and understands a question, an answer to a question. How did they get the number they got on this record? If we want to look to see, how did they get it other than by some speculation? No speculation, Your Honor. Here's how they got it. This is a case about eight aircraft, and the jury came up with an $8 million verdict. The simplest explanation and the easiest math is $1 million per plane, and you can find that in two places in the record. One of the fact witnesses for Global, Patrick Yip. He was the director of finance for Global, and he said that it would be $1 million per plane. He had a spreadsheet that was dependent on various... And did he also say how many planes? Yes, he had a spreadsheet. No, no, no. I mean on this record. Yes. There was going to be, the purchase was going to be the 1 to 8 million. It wasn't, I mean 1 to 8 planes. It wasn't going to be 8 planes, or it wasn't going to be 7 planes. It wasn't going to be 6. Somebody had to decide how many planes. So under your theory, somehow somebody decided 8 planes, I gather. That's right, Your Honor. And how do you decide 8 planes on this record? On this record, two ways, Your Honor. First, they would look at the LOI, and the plane language of the LOI said, if acceptable financing. It talked about is not available to permit aircraft to be purchased. The number of aircraft may be reduced or as agreed. So the number was going to be 8. That was the maximum number unless Global couldn't find the financing. So how the jury found that it was financeable was based on Global's expert. Global had two experts in the industry, the aviation finance industry, and Mr. Cox testified about two opinions. And the first opinion he opined on is, were these financeable? Were these aircraft financeable? And his opinion was, yes, for all 8. This was 2010. We were coming out of the recession of 2008, mid-2009. He said the market was coming back for airlines. Mr. Cox, to get back to the 8 million and how there were two places in the record for $1 million per plane, that was Mr. Yip's calculation of $1 million on a 6.75% interest rate, and Mr. Cox had the same thing in a demonstrative exhibit that you can see in the record at ER 1001. Mr. Yip's spreadsheet is at the supplemental excerpts, pages 66 to 68, and his testimony about that is in the supplemental record, SER 660 to 661. So here's what happened at trial. Global's witnesses, starting with Jacob Hodges, were sincere and credible, and they were backed up by two experts in the aviation finance industry. National, for its part, put on its case in just a few days, called just a few witnesses, and didn't have an expert in the industry. So if your job were simply to reweigh the evidence, it shouldn't be a hard call to affirm. But that, of course, is not the standard now that we're on appeal, and all the credibility determinations are made in Global's favor. You essentially assume the jury believed Global's witnesses. All the inferences are in Global's favor, and you ask would no reasonable jury have come to this result, and the answer to that question is simply no. The judgment should be affirmed. So to get to this initial question, should the case have even gone to the jury? And, of course, the ordinary rule is you don't look on appeal after a full trial on the merits to whether a summary judgment ruling was correct. Now, that absolutely makes sense. If we're looking at anything, it's whether it should have gotten to the jury or whether they should have gotten an instruction. The idea that we're going to go back and look at summary judgment after there's been a trial is sort of off the wall. That's right, Your Honor, and the district court made a perfectly reasonable decision. Contract didn't say, didn't have an exclusivity provision, didn't have a non-exclusivity provision. Let's look at the extrinsic evidence, the standard, and the industry. And so we are applying New York law, it was asked about, and as National conceded in its opening brief, under New York law, you don't need the word exclusive in a contract to make it so. You look at the entirety of the contract, and in a case where you have ambiguity, you look at the party's dealings and the negotiations leading up to that contract. Now, this contract didn't need an exclusivity provision because the contract as a whole was exclusive, and that's why National proposed new language making it non-exclusive. This is in the excerpts of record at page 931. National proposed adding, if lessee, National, receives a firm commitment from another financial institution, that could be another reason to lower the number of aircraft in the deal from eight to some lower number. Well, National wanted an out if it got another deal somewhere else, and Mr. Hodges of Global rejected it, said no, that's a non-starter, and that would have made no sense for National to propose that language if it were non-exclusive to begin with. And the reason for exclusivity in the industry was really practical and common sense, and National understood that, that you can't go talk to the banks and negotiate with them for lending in a deal of this magnitude unless you have exclusivity. And as Mr. Stuke's National's agent told National, they are not going to proceed on a non-exclusive basis, and I understand why. Let's talk about the jury instruction. A couple of jury instructions are challenged on exclusivity and then damages. And on both of these issues, National says, these are issues of law, you review de novo. And the answer in each of those instances is no, this is a discretionary review. And let me first explain on exclusivity. There was nothing wrong with the instructions on the breach of contract as a matter of law. The judge didn't say it was National's burden to prove exclusivity. The judge didn't misstate any of the elements of contract, four elements, the existence of a contract, partial performance, breach, damages. The jury was instructed on all of that. And you can tell that this was a discretionary issue going to really the formulation of the instructions. If you look at what National argued below, they said we have two reasons that we should get our exclusivity instruction. Neither was that it was required as a matter of law. And that is at the ER 73. Their first argument is it would be helpful to the jury, not an argument as a matter of law required. Second argument, it would be consistent with Judge Morrow's summary judgment decision. Well, that summary judgment order didn't say, and thou shalt give an instruction on exclusivity. Again, it was something entirely within the discretion of the district court. And what he did was quite reasonable. He said this trial has been about exclusivity. Argue it in your closing. And National took him up on it. We know there was no harm in this instruction because National made the following argument in closing. Was the agreement exclusive or not? That's one of your tasks when you go back in the room. Now, this theory of the case instruction argument that National came up with on appeal, that's a red herring. National's whole theory of the case at the trial was that Mr. Hodges had misled them into signing the LOI in the first place. And they had counterclaims on that theory. And National got the instructions they wanted, that, quote, Mr. Hodges misled it into signing the LOI in the first place. The jury considered that theory and rejected it. So the jury instructions, which you consider in their entirety, were proper on the contract claim. The jury was told Global, the plaintiff, must prove that Global and National had a meeting of the minds on all essential terms of the contract. Necessarily included exclusivity, which was the major disputed issue at trial. And that Global must prove that Global and National entered into a contract whereby Global agreed to buy from National and then lease back to National eight Boeing 747 aircraft and went on. But that was, they agreed to do it for all. That was Global's burden, and they satisfied it. To turn to the issue of the alleged error in the damages instruction. Again, they say, an issue of law. They misstated the law. You review it de novo. No, you don't. What they're really saying is the evidence didn't support the instruction that the district court gave. The district court gave a perfectly correct, as a matter of law, instruction on benefit of the bargain damages. What they're saying is that the evidence actually supported a lost profits instruction. And the standard of review depends on the nature of the claimed error. And if the error is that there's insufficient evidence to support the instruction, you review that for abuse of discretion. Now, there was no error because Global was just asking for its general contract damages. Put me in the position I would have been in had you performed, National. And the jury was told the purpose of such damages is to put National in as good a position as it would have been in if Global had performed. That was the same instruction the court gave for National on its benefit of the bargain instruction if you look at ER 751. There's a question about the UCC, the New York UCC. Under the UCC, Global is entitled to the benefits of its bargain under the contract. There are actually three district court cases in this case below, three district court judges, Judge Liu, Judge Morrow, Judge Bernal. Each of them recognized the UCC applied here on this contract claim. And the remedy it provides for is a benefit of the bargain remedy. To talk a little bit about lost profits, they say no. Again, what you really were asking for is lost profits. And under the evidence, we were not. This is not a case where Global said, if you get this deal for eight aircraft with National, we're next going to do a deal with United Airlines for 15 planes, and we want all of that, those profits too. No, it was the damages that naturally flowed between this contract, between National and Global. And finally, to get to the point, if you assume everything they say is right, all these issues of law, mistakes of law were made, there's the harmless error doctrine, and we should win under that too. Because even if the jury was instructed exactly as National wanted, the evidence supports the verdict. They asked if ER-260 has their proposed instruction. And it said three things on lost profits. First, that Global would have been able to secure financing necessary to purchase the aircraft. And that goes back to the questions that Judge Ferris was asking me, how many aircraft were there? So Global already had to prove that to get the eight million in the first instance, and there was evidence in the record from one of the experts who testified for Global that once you have a letter of intent, 99 of 100 deals close. You had the other expert I already talked about who said in the market, his opinion, these deals were financeable. So second, and relatedly, National said they wanted an instruction on the final number of aircraft National agreed to sell, and then leased back its eight under the same explanation I've already given. Now what National really hangs its hat on this appeal is the third thing they asked for, the amount of loss that Global is certain to have suffered were it not for National's breach. Under New York law, certainty means reasonable certainty. There's always a predictive element when you're calculating the damages that would flow after a contract has been breached. And the jury was specifically told three times, you must not speculate or guess. That's in the initial instructions. Second, that there were approximate causation instructions, a causal link instruction. Global shouldn't recover more from a breach that it would have gained had the contract been fully performed. And then after the question, they were again told, you shall not speculate. So in conclusion, as this court explained in an opinion written by Judge Smith in Skydive Arizona v. Quattrochi, where a district court has upheld a jury award in denying a motion for new trial, such a ruling is virtually unassailable. And the mere fact... It's well said, don't you think? Quite well said. And I'm only sorry we didn't cite it in our briefs. Certainly a well-written opinion, I'm sure. And he went on to write that the mere fact that plausible arguments could be made that the jury's verdict is too high does not warrant reversal. The same rule applies here. On behalf of Global, we'd ask you to affirm. Thank you. Counsel, you have a little bit of time left. Thank you, Your Honor. Just briefly on the issue of exclusivity, if there is an error of law made on summary judgment, this court does look back at the summary judgment ruling because where an error of law was made... Even if it ultimately went to the jury? Yes, under this court's holdings in Escriba and Banuelos and other cases that we've cited in our brief. Assuming that there's enough evidence to go to the jury, there was enough to get past summary judgment, so why shouldn't the issue just be whether it got to the jury properly or not? Why would we look back to a summary judgment? It's not an issue of disputed evidence. It's an issue as a matter of law. It's an issue of whether you're entitled to prevail as a matter of law. If that were true, not saying whether it is or not, then that would be true at the time of the jury decision just as it was at the time of the summary judgment. So why should we look back to the summary judgment? I understand you're saying there are cases that say we can do that. I'm asking you why we should. In either case, Your Honor, what we're asking you to do is to look at the letter of intent on its face and determine that it is unambiguous as a matter of law as to the issue of exclusivity. On the issue of damages briefly, what you did not hear Global talk about at all in their presentation was the Fairbrook case or the Goodstein case or the other cases from New York that hold that expectancy damages are not available as a matter of law when what you have is a breach of an agreement to negotiate in good faith that leaves open a number of terms and conditions. And on its face, that's what this letter of intent was. It was merely an agreement to negotiate in good faith that did not entitle Global to go to the jury with $194 million in lost profits damages. Thank you, Your Honor. Thanks to both counsel for your arguments. They're most helpful. The case just argued is submitted.
judges: Sentelle, Farris, M. Smith